UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
MAR 2 7 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-300-GWU

ROBIN MILLS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

      Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

      Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Mills

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Mills

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Robin Mills, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of low back pain, headaches, major depressive disorder, polysubstance dependence and early partial remission, and a borderline personality disorder. (Tr. 19). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform her past relevant work as a cashier and, therefore, was not entitled to benefits. (Tr. 21-3). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to medium level exertion, could only occasionally stoop, and would have a "limited but satisfactory" ability to relate to co-workers, interact with supervisors, deal with work stresses, and handle detailed and complex instructions. (Tr. 271). The

Mills

VE responded that this individual could perform the plaintiff's past work as a cashier. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

The ALJ rejected functional capacity assessments from the plaintiff's treating neurologist, Dr. Arden Marc Acob, and her treating psychiatrist, Dr. Lea Hayag. In both cases, the ALJ found that the opinions from the treating sources were not supported by their treatment notes or by other evidence. (Tr. 17-18). In the case of Dr. Acob's opinion relating to physical restrictions, the Court finds substantial evidence to support the administrative decision but, in the case of Dr. Hayag's opinion relating to mental restrictions, a remand will be required for additional consideration.

The plaintiff alleged disability due to back pain and nervousness. (Tr. 73). A consultative physical examiner, Dr. Steven Lamb, conducted an examination in September, 2002 which showed no abnormalities other than some tenderness in the lower lumbar spine, and a slightly restricted ability to stoop. (Tr. 136-8). Otherwise, her range of motion was normal, there was no spasm or impairment in toe or heel walking, and her gait and station were unremarkable. (Tr. 137-8). Lumbosacral spine x-rays were normal. Dr. Lamb concluded that there was evidence for mild restriction in the plaintiff's tolerance for stooping, but not in any other area. (Tr. 138).

8

Mills

A state agency physician reviewed the record at this point and concluded that the plaintiff did not even have a "severe" physical impairment. (Tr. 141).

Subsequently, the plaintiff sought treatment from Dr. Acob, beginning in October, 2003, on referral from a family physician for evaluation of scoliosis and migraine headaches. (Tr. 199). Dr. Acob reported that there had been an "unremarkable" CT scan of the head. (Id.). His examination on this occasion, and on the several other occasions through early 2004 in which he saw the plaintiff, showed paraspinal muscle tenderness, but normal gait and station, and "hyperactive" but symmetrical reflexes. (E.g., Tr. 192, 197). He obtained an EMG/NCV of the lower extremities, which was negative (Tr. 190, 193-4), and early in 2004 obtained an MRI of the lumbosacral spine which he commented "looks good" and "agrees with the results of the EMG/NCV studies . . . we had done" (Tr. 183). The plaintiff continued to complain of migraines and pain shooting from her lower back into her legs. (Id.). Despite the apparently innocuous findings, Dr. Acob prescribed medications such as Depakote, Percocet, and Klonopin, in addition to a "T-pump for pain." (Tr. 180). Dr. Acob submitted a functional capacity assessment on February 16, 2004 stating that the plaintiff could lift only five pounds occasionally and "nothing" frequently, could stand or walk only four hours and sit for two hours in an eight-hour day, could occasionally balance, could never climb, crouch, kneel, crawl, bend, and had additional restrictions on reaching, handling, feeling, pushing

9

and pulling, working around heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity, and vibration. (Tr. 208-11). As justification for these restrictions, he cited the EMG/NCV testing, "paraspinal muscle tenderness," and hyperactive reflexes. (Id.). He also mentioned severe headaches, bad nerves, "bad back problems and back pain," and dizziness. (Tr. 211).

While the opinion of the treating sources such as Dr. Acob is generally accorded great deference, when supported by adequate objective findings, see, e.g., Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985), the objective findings in the circumstances of this particular case do not remotely support Dr. Acob's extreme restrictions. As noted, the EMG/NCV testing was reported as completely normal, as was the MRI of the lumbar spine. It was quite reasonable for the ALJ, as finder of fact, to conclude that, essentially, a finding of paraspinal muscle tenderness and hyperactive reflexes would not support essentially disabling physical restrictions.

Regarding the mental restrictions, however, the evidence of limiting conditions is more serious.

The office notes of Dr. Hayag, the psychiatrist, and a mental health counselor at the same clinic, cover a period from October, 2002 to July of 2004, and reflect such findings as persistent depressed mood, tearfulness, a sad affect, agitated psychomotor activity, and a blunted affect. (Tr. 213-40). Dr. Hayag prescribed various anti-depressant medications, most recently Paxil, Topamax, and Seroquel.

10

(Tr. 213).[1] Dr. Hayag's mental assessment form, completed on February 16, 2004, indicated that the plaintiff had a "seriously limited but not precluded" ability to deal with the public, deal with work stresses, maintain attention and concentration, behave in an emotionally stable manner, and relate predictably in social situations. (Tr. 205-9).

The only offsetting mental health opinion from an examiner came from Dr. Kevin Eggerman, who interviewed the plaintiff in September, 2002, prior to the beginning of her treatment by Dr. Hayag, and concluded that the plaintiff, while she had diagnoses of polysubstance abuse in partial remission and a personality disorder with a predominance of avoidant, dependent, and borderline personality traits, would, nevertheless, have a "good" ability to understand and remember simple instructions and a "fair" ability to understand and remember moderately complex and complex instructions, relate to co-workers, persist on tasks, and tolerate work-related stress. (Tr. 134-5).[2] In the present case, the opinion of the treating source is based on a longitudinal view of the plaintiff's condition and well supported by findings in her

---

[1] At one point, the plaintiff's child was removed by a social worker because of a perception that the plaintiff was overmedicated. (Tr. 219).

[2] State agency psychologists who reviewed the record after Dr. Eggerman's report but before Dr. Hayag's concluded that the plaintiff did not have a "severe" mental impairment. (Tr. 143, 159). Since the sources did not have access to the entire record, however, their opinion does not serve as substantial evidence to overcome the opinion of a treating source.

11

Mills

office notes, as outlined above. In view of the fact that the VE testified that a person with the psychological restrictions given by Dr. Hayag would not be employable, a remand will be required for further development of this issue.[3]

The decision will be remanded for further consideration.

This the 27 day of March, 2006.

G. WIX UNTHANK
SENIOR JUDGE

---

[3]At a minimum, the ALJ should obtain evidence from a medical expert with access to all of the evidence.